DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Marcos Elizondo, appeals the judgment of the Lucas County Court of Common Pleas, following a bench and jury trial, which found appellant guilty of carrying a concealed weapon, in violation of R.C. 2923.12, and having a weapon while under disability, in violation of R.C. 2923.13(B).
 {¶ 2} Appellant raises the following assignments of error:
 {¶ 3} "Assignment of Error No. 1
 {¶ 4} "Appellant's conviction must be overturned because the trial court abused its discretion when it allowed the statement `That little pea shooter' into evidence.
 {¶ 5} "Assignment of Error No. 2
 {¶ 6} "Appellant's convictions must be overturned because the inculpatory statement admitted into evidence was made by appellant during a custodial interrogation without appellant being informed of his `Miranda rights.'
 {¶ 7} "Assignment of Error No. 3
 {¶ 8} "Appellant was denied effective assistance of trial counsel to his prejudice and in violation of the U.S. and Ohio Constitutions."
 {¶ 9} The facts relevant to this appeal are as follows. On June 7, 2002, in case no. CR02-2112, a two-count indictment was filed charging appellant with carrying a concealed weapon and having a weapon while under disability. The latter charge stemmed from appellant's 1998 aggravated robbery conviction in case no. CR98-2068. Appellant was also charged with violating his probation.
 {¶ 10} On June 18, 2002, appellant entered a not guilty plea to the charges in CR02-2112 and, on October 7, 2002, the case proceeded to trial. Count I, carrying a concealed weapon, was tried to a jury and Count II, having a weapon while under disability, was simultaneously tried to the court. At trial, the following testimony was presented.
 {¶ 11} Toledo Police Officer Paul Toth testified that on March 22, 2002, at approximately 2:00 a.m., Toth and his partner were on patrol in downtown, Toledo, Ohio, in a marked police paddy wagon. Toth testified that they were proceeding eastbound on Superior Street when they observed a white Cadillac traveling westbound with no headlights on. The Cadillac turned into a parking lot and Toth activated the overhead lights and pulled in behind.
 {¶ 12} Toth testified that he observed appellant and a passenger making "furtive" movements before approaching the vehicle. Toth took appellant's license and registration to do a records check. Toth and his partner again approached the vehicle, Toth on the driver's side. Toth testified that after his partner "drew his service weapon," Toth drew his weapon and they attempted to get the individuals out of the vehicle. Toth testified that his partner had observed a weapon in the "pouch" directly behind the passenger's seat. The weapon was later identified as a loaded .380 silver automatic.
 {¶ 13} Toth and his partner handcuffed appellant and the passenger and placed them in the back of the police wagon. Toth testified that appellant was not cooperative; appellant was agitated and swearing. Toth stated that they did not advise the individuals of their Miranda rights at that time because they were not questioning them other than requesting general personal information. The passenger was eventually released; appellant was taken to the downtown police station.
 {¶ 14} Toth's partner, Toledo Police Officer Kevin Braun, testified next. Braun testified that the second time they approached appellant's vehicle he observed a gun in the "rear compartment" or pouch behind the passenger seat. Braun stated that he saw the stock or handle of the gun and was able to identify it as a handgun. Braun testified that he immediately pulled his weapon and that he and Toth got the individuals out of the vehicle.
 {¶ 15} Braun testified that after questioning the passenger and running a criminal record check, they allowed him to leave. Braun stated that appellant was in the back of the paddy wagon and asked: "What am I under arrest for?" Braun answered: "You got a gun in your car. Obviously that's what you're under arrest for." According to Braun, appellant responded: "That little pea shooter."
 {¶ 16} During cross-examination, Braun was questioned regarding appellant's "pea shooter" comment. Braun admitted that the statement was not included in the police report. Braun testified that he includes in his reports all statements that are relevant and aid in covering all the elements of the crime. Here, Braun stated that he included all the information necessary to charge appellant with carrying a concealed weapon.
 {¶ 17} Following Braun's testimony, appellant's trial counsel moved to strike the statements (i.e., "That little pea shooter.") not incorporated in the police report or supplied to the defense during discovery. Counsel argued that the statement was inculpatory as it demonstrated knowledge of the weapon. Appellant's counsel did admit that he never made a written request for discovery as required under Crim.R. 16, but contended that the parties had an "open policy."
 {¶ 18} The state acknowledged that it became aware of the statement approximately three weeks prior to trial, but did not disclose the statement to appellant. The court concluded that because appellant's counsel failed to make a discovery request, the state did not have a duty to disclose the statement. The court further opined that even if a request had been made, the statement disclosed, and a motion to suppress filed, the statement was voluntary and not the result of custodial interrogation.
 {¶ 19} Appellant then presented the testimony of his brother, Dan Elizondo, who testified that he had borrowed appellant's vehicle that day and left his gun in it. Elizondo testified that he had been carrying a weapon because he had been receiving death threats after testifying in a murder trial. Elizondo stated that he tried several times to contact the police department regarding the case but was unsuccessful until just days before trial.
 {¶ 20} The jury found appellant guilty of carrying a concealed weapon, and the trial court found appellant guilty of having a weapon while under disability. On November 22, 2002, in CR02-2112, appellant was sentenced to 17 months in prison for carrying a concealed weapon and three years in prison for having a weapon while under disability. In CR98-2068, appellant admitted to a probation violation and his indefinite 3 to 15 year sentence was reimposed. The trial court sentenced appellant to concurrent sentences in CR02-2112, to be served consecutively with the sentence in CR98-2068. Appellant appealed both judgment entries, which were consolidated for purposes of appeal.
 {¶ 21} In appellant's first assignment of error, he contends that the trial court abused its discretion when it allowed the statement "that little pea shooter" into evidence. Particularly, appellant argues that the statement was not disclosed as required under Crim.R. 16.
 {¶ 22} Crim.R. 16 provides, in part:
 {¶ 23} "(A) Demand for Discovery. Upon written request each party shall forthwith provide the discovery herein allowed. Motions for discovery shall certify that demand for discovery has been made and the discovery has not been provided.
 {¶ 24} "(B) Disclosure of evidence by the prosecuting attorney
 {¶ 25} "(1) Information subject to disclosure.
 {¶ 26} "(a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 {¶ 27} "* * *;
 {¶ 28} "(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer; * * *."
 {¶ 29} It is undisputed that appellant did not file a request for discovery in this case; however, appellant contends that the parties agreed to conduct discovery on an "open file" basis. The state denies any such agreement.
 {¶ 30} As set forth above, Crim.R. 16(A) requires that requests for discovery be in writing. If a party fails to make a discovery request within the stated time period, he waives his right to discovery. State v. Turner, 2nd Dist. No. 2001 CA 79, 2002-Ohio-1809, at ¶ 10, citing State v. Peterson (Nov. 29, 1996), 11th Dist. No. 96-T-5456; State v. Baker, 9th
Dist. No. 21414, 2003-Ohio-4637. Further, the failure to make a written Crim.R. 16 request for discovery precludes a defendant from objecting on those grounds to the introduction of evidence. Id.
 {¶ 31} In the instant case, the state voluntarily provided appellant with the police reports as well as appellant's prior criminal record. The state further indicated that any names listed in the police reports could be called as witnesses for the state. Based on the foregoing, we find that the trial court did not abuse its discretion when it allowed the "pea shooter" statement into evidence though it had not been provided to appellant during discovery. Appellant's first assignment of error is not well-taken.
 {¶ 32} In appellant's second assignment of error, he argues that the "pea shooter" statement was wrongly admitted into evidence because the statement was made during a custodial interrogation without appellant being informed of his Miranda
rights. The state contends that the statement was voluntary.
 {¶ 33} It is well-established that the state may not introduce statements of an accused unless the accused was informed of his constitutional rights to counsel and against self-incrimination and effectively waived these rights. Mirandav. Arizona (1966), 384 U.S. 436, 475. However, law enforcement officers need only inform the accused of these rights when the accused is subject to custodial interrogation. Id. The Miranda
court defined "custodial interrogation" as "* * * questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom to act in any significant way." Id. Further, law enforcement officers need not give warnings where the accused volunteers the statements without questioning. Id. at 479.
 {¶ 34} In this case, appellant was removed from his vehicle, handcuffed, and placed in the back of the police paddy wagon. Certainly, it appears that appellant was in custody. More problematic is appellant's contention that he was interrogated. The testimony presented at trial demonstrates that appellant asked Officer Braun why he was under arrest. Braun then indicated that appellant had a gun in his car and appellant responded with the statement "that little pea shooter." We find that this exchange does not rise to the level of "custodial interrogation" as set forth in Miranda, and that the statement was voluntary. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 35} In appellant's third and final assignment of error, appellant contends that based upon his trial counsel's failure to request discovery, he was denied the effective assistance of counsel. Appellant argues that, had trial counsel made a written discovery request and the state failed to provide the "pea shooter" statement, the trial court would have most likely excluded the statement.
 {¶ 36} Legal representation is constitutionally ineffective, and a basis for reversal or vacation of a conviction, when counsel's performance is deficient and results in prejudice to the accused. Strickland v. Washington (1984), 466 U.S. 668. In order to prove ineffective assistance of counsel, a defendant must show (1) that his counsel's performance fell below an objective standard or reasonable representation in some particular respect or respects and (2) that he was so prejudiced by the defect or defects that there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different. State v. Bradley (1989),42 Ohio St.3d 137, paragraphs two and three of the syllabus, following Strickland.
 {¶ 37} Applying the above law to the present case, even assuming that appellant's counsel was deficient by failing to request discovery, there is no evidence that appellant was prejudiced by such deficiency. Appellant assumes that, had counsel requested discovery, the state would not have provided a written summary of the "pea shooter" statement. Appellant then goes on to assume that, despite the broad discretion afforded to the trial court when imposing discovery sanctions, the court would have suppressed the statement upon finding a violation of Crim.R. 16. See Crim.R. 16(E)(3). These assumptions are too speculative to demonstrate that, but for trial counsel's failure to request discovery, the result of the trial would have been different. Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 38} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
Judgment Affirmed.
Handwork, P.J., Pietrykowski, J., and Lanzinger, J., concur.